UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Raymond St. Francis,

    Plaintiff,

    v.                                                  Civil Action No. 2:10-CV-247

Michael J. Astrue, Commissioner of
Social Security Administration,

    Defendant.

## OPINION AND ORDER
(Docs. 16, 22)

Plaintiff Raymond St. Francis brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Plaintiff's motion to reverse the decision of the Commissioner (Doc. 16)[1], and the Commissioner's motion to affirm the same (Doc. 22).

For the reasons stated below, the Court GRANTS Plaintiff's motion, and DENIES the Commissioner's motion.

---

[1] Plaintiff's motion, filed before the adoption of the recent revisions to Local Rule 9(a)(6), was accompanied by separate document titled "Statement of the Facts" (Doc. 16-3) in which relevant facts are listed in a numbered format. Local Rule 9(a)(6), as recently revised, now contemplates a different procedure for social security cases. For example, instead of citation to a separately filed Statement of Facts, Local Rule 9(a)(6)(B) now requires that memoranda contain "a summary of the case's procedural history and a brief summary of the relevant background facts" and Local Rule 9(a)(6)(C) now demands that memoranda contain "specific page citations to the administrative record for supporting evidence."

## **Background**

Plaintiff was thirty-four years old on the alleged disability onset date of November 1, 2007.  (Administrative Record ("AR") 28, 134, 150.)  Although he has taken some ninth and tenth grade classes, he has completed school through only the eighth grade. (AR 28-29, 154.)  Plaintiff has work experience in the construction field, primarily doing carpentry work for his father's business.  (AR 28-29, 48, 151.)  His father passed away in 1996, leading to Plaintiff's abuse of alcohol and eventual loss of his driver's license. (AR 29-30, 44, 286.)

On November 1, 2007, Plaintiff injured his left wrist in a four-wheeling accident, causing him significant pain.  (AR 31, 34, 201-04.)  A November 26, 2007 x-ray revealed a fracture of the scaphoid bone.  (AR 200.)  For some time thereafter, Plaintiff was treated with conservative management and immobilization, including use of a bone stimulator, a long-arm cast, and a short-arm cast.  (AR 31, 206, 209, 216, 229, 296.)  The injury did not heal properly, and thus on December 12, 2008, Plaintiff underwent surgery, followed by use of a cast again and then a removable splint.  (AR 226, 239, 298.) Months after the surgery, Plaintiff reported that he was still experiencing considerable pain and difficulty using his left wrist.  (AR 36-37, 294, 296, 298.)  Therefore, on June 23, 2009, Plaintiff underwent a second surgery.  (AR 36, 300-04.)  Despite this surgery, Plaintiff continued to report very significant pain with decreased sensation.  (AR 290, 292.)  On December 22, 2009, a third surgery was performed on Plaintiff's wrist, this time including excision of the nerve.  (AR 36, 309-12, 343.)

Meanwhile, in June 2008, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging that he became unable to work on November 1, 2007, the date of his wrist injury. (AR 134-43, 150.) Pursuant to his disability application, Plaintiff claims that he is "unable to use [his] left arm without pain," and has "very limited mobility of [his] wrist [and is] unable to bend it without pain."[2] (AR 150.) He also claims that he is "extremely depressed" about his wrist problem. (*Id.*) The application was denied initially and on reconsideration, and Plaintiff timely requested an administrative hearing, which occurred on March 16, 2010. (AR 55-59, 131-33.) Plaintiff appeared and testified at the hearing, and was represented by counsel. (AR 20-54.) In addition, vocational expert ("VE") Christine Spaulding testified at the hearing. (AR 47-53.)

On May 19, 2010, Administrative Law Judge ("ALJ") Robert Klingebiel issued a decision finding that Plaintiff was not disabled under the Social Security Act from November 1, 2007, the alleged date of disability, through the date of the decision. (AR 7-14.) Thereafter, the Decision Review Board informed Plaintiff that it had not completed its review during the prescribed period, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted his administrative remedies, Plaintiff filed his Complaint in this case on October 15, 2010. (*See* Doc. 1.)

---

[2] Plaintiff further states in his disability application that he fractured his left scaphoid; the bone is "not healing and there is evidence of avascular necrosis"; he has been "in and out of a cast since November 07"; and he has a "[b]roken left wrist navicular that won't heal- bone is dying." (AR 150.)

3

**ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

4

Employing this five-step analysis, ALJ Klingebiel first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 1, 2007. (AR 9.) At step two, the ALJ found that Plaintiff had the severe impairment of "status post fracture of the left scaphoid with delayed union and nerve entrapment." (AR 10.) He further found that Plaintiff's depression and alcohol abuse were not severe impairments because "the record does not show that [Plaintiff] has had any period of 12 months during which these conditions have had more than minimal effect on his ability to perform basic work functions." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 11.)

Next, the ALJ determined that Plaintiff had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except that he was "limited from using his left, non-dominant upper extremity for pushing, pulling, handling, reaching, fingering or feeling"; and he "need[ed] to avoid exposure to vibrations, . . . unprotected heights[,] and . . . dangerous machinery." (*Id.*) At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a construction laborer, given that such work was "medium to heavy in exertional requirements." (AR 12.) Finally, at step five, relying on testimony from the VE, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff could perform, including marker, mail router, routing clerk, and assembly worker. (AR 13.) The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 1, 2007 through the date of the decision. (*Id.*)

5

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Plaintiff's primary argument is that the ALJ erred in his analysis of the April 2010 opinions of treating orthopedic surgeon Dr. Michael Benoit.  (*See* AR 386-91.)  In relevant part, Dr. Benoit opined as follows:

- Plaintiff "would have experienced work absences in excess of 2 times a month because of his medical condition" during the alleged disability period.  (AR 387, 390.)

- "[Plaintiff's] impairments, pain from those impairments, or side effects of medications" would cause him to complete job tasks "[g]realty slower" than normal.  (*Id.*)

- Plaintiff "would need more than ordinary rest breaks during a work day or shift."  (*Id.*)

- Given his "left hand/wrist . . . pain with motion," Plaintiff would not be able to "perform reaching activities in any direction . . . on a frequent basis."  (AR 388, 391.)

- The "medical reason[]" for the above opinions is: "chronic nerve pain from the palmer cutaneous nerve [in the] left arm."  (*Id.*)

7

At step two of his sequential evaluation, the ALJ noted Dr. Benoit's opinion that Plaintiff's left hand condition "affect[ed] his ability to perform tasks at a usual pace and . . . prevent[ed] him from performing reaching activities." (AR 10.)  Later, in the context of his RFC determination, the ALJ made the following assessment of Dr. Benoit's opinions:

> Dr. Benoit indicate[d] that [Plaintiff] would be slower in use of his left upper extremity, but records have not shown that he has debilitating pain. He does remain quite active even performing tasks such as hunting by self-report.  *The undersigned does afford the opinion of Dr. Benoit substantial weight*, but notes that even with the requirement that the claimant have needed to miss some work since his injury, the record does not describe the reasons for such a requirement and provides no reason for it.

(AR 12 (emphasis added).)

Undisputedly, Dr. Benoit was Plaintiff's treating physician, and thus the ALJ was obligated to follow the "treating physician rule" in considering his opinions.  That rule states that a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993).  Even when a treating physician's opinion is not given controlling weight, however, the opinion is still entitled to *some* weight because a treating physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). The regulations provide that certain "factors" – including "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist" – must be considered when a treating physician's opinion is not given controlling weight. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). In addition, the ALJ must "always give good reasons" for the weight afforded to the treating physician's opinion. *Id.*; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). The Second Circuit has held that "[f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *see Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

 Here, the ALJ failed to consider the required "factors" in evaluating Dr. Benoit's opinions. If he had, he would have noted that Dr. Benoit was a specialist in the relevant area, orthopedics; and had an extensive treating relationship with Plaintiff. The ALJ also would have noted that Dr. Benoit's opinions are supported by objective medical evidence, including the need for three surgeries and extensive use of a cast and bone stimulator, as well as by Dr. Benoit's own treatment records. Instead, without assessing

9

these factors, the ALJ adopted Dr. Benoit's opinion that Plaintiff was unable to use his left hand/wrist to perform any reaching activities (AR 388, 391), while at the same time rejecting Dr. Benoit's opinions that Plaintiff would have experienced work absences in excess of two times each month and would complete job-related tasks in a "greatly[-]slower"-than-normal manner (AR 387, 390). The ALJ provided the following explanations for his rejection of the latter opinions: (a) "records have not shown that [Plaintiff] has debilitating pain"; (b) Plaintiff stated that he "felt better when active and was able to identify outdoor activities . . . and plan to . . . clean[] his game room"; (c) Plaintiff "does remain quite active even performing tasks such as hunting by self-report"; and (d)"the record does not describe the reasons for such a requirement and provides no reason for it." (AR 12.) Each of these explanations lacks merit.

     First, the record does in fact reflect Plaintiff's reporting to medical providers that he suffered from debilitating pain during the alleged disability period. For example, a March 2009 treatment note reflects Plaintiff's reporting to Dr. Benoit that his pain was "ongoing" and "becoming more and more intolerable," and that Plaintiff rated his pain on that day at a "8/10." (AR 296.) The same note also states that "virtually any activity" made Plaintiff's pain worse, and that Plaintiff was also experiencing "pain at rest," which was "concerning." (*Id.*) Similarly, an evaluation from a different provider during the same month states that Plaintiff's pain was "severe" and was "limit[ing]" his ability to perform functional tasks such as getting dressed and doing household chores. (AR 265.) Approximately six months later, in August 2009, a treatment note from Dr. Benoit stated that Plaintiff was "continuing to have very significant pain around the left wrist [and]

10

forearm." (AR 292.) In an October 2009 treatment note, Dr. Benoit stated that Plaintiff's pain was "now radiating up his forearm" and that Plaintiff felt that the discomfort was "unbearable." (AR 290.) Finally, in January 2010, physician's assistant ("PA") Jeffrey Fine noted that Plaintiff "continue[d] to complain of constant [left] wrist pain." (AR 334.)

Second, the record does not demonstrate that Plaintiff was "quite active" during the alleged disability period. In support of this finding, the ALJ refers to Plaintiff's reporting to counselor Tracey Peck in March 2009 that "he felt better when active and was able to identify outdoor activities . . . and plan to perform the task of cleaning his game room." (AR 12 (citing AR 276).) But in fact, the counseling record states:

> [Plaintiff] had less intrusive thoughts due to him being busier as the weather is getting nicer. . . . [Plaintiff] worked on identifying specific activities that he can participate in due to his increasing free time since the accident and him not being able to work. [Plaintiff] *was able to identify outdoor activities* with a peer or his wife and kids as a way to distract and feel like he is "getting out of my head." [Plaintiff] stated that *he would work on cleaning his animals [in] his game room* this weekend . . . .

(AR 276 (emphases added).) Regarding the statement that Plaintiff was able to identify "outdoor activities," there is no indication as to what those activities were, and thus it is impossible to know whether they entailed activities which would have been precluded either by Plaintiff's allegations of chronic pain or by Dr. Benoit's opinions about Plaintiff's limitations caused by such pain. Further, this counseling record explicitly states merely that Plaintiff had *plans* to clean his animals in his game room; there is no indication that Plaintiff actually engaged in such activity. Moreover, the ALJ's statement that Plaintiff was planning to "clean[] his game room" (AR 12) was inaccurate, as it

11

appears that Plaintiff was planning on cleaning merely "his animals" in his game room (AR 276). It is unclear how many "animals" were contained in that room, how big they were, and what the process of "cleaning" them entailed. Therefore, this counseling record provides little if any useful information regarding Plaintiff's functional abilities.

The ALJ also stated that Plaintiff hunted during the alleged disability period, but the record is inconsistent on this point, and more importantly, does not reveal how much and what type of hunting Plaintiff did. Specifically, Plaintiff testified at the March 2010 administrative hearing that he "did . . . a little bit" of hunting with his teenage and 20-year old step-sons in 2009. (AR 45.) The ALJ did not follow-up with questions regarding what "a little bit" of hunting entailed or what type of hunting Plaintiff engaged in (in a stand or on foot, for example); and it is unclear how the ALJ determined that Plaintiff's testimony that he did "a little bit" of hunting demonstrated that Plaintiff was "quite active" during the alleged disability period. Nor is it clear that the ALJ was aware that, in a Function Report from July 2007, Plaintiff reported that, since his injury, he was "no longer . . . able to hunt[,] fish[, or] play sports with [his] kids." (AR 160.) Likewise, the ALJ failed to reference an October 2008 Function Report wherein Plaintiff stated that he could no longer hunt, fish, and work; or do sports, yard work, and house work. (AR 173.) Instead of acknowledging this inconsistent evidence, the ALJ merely stated – without citation to the record – that Plaintiff was able to "perform[] tasks such as hunting by self-report." (AR 12.)

Next, with respect to the ALJ's statement that "the record does not describe the reasons for [Dr. Benoit's] requirement [that Plaintiff would miss some work as a result of

12

his injury] and provides no reason for it" (AR 12), Dr. Benoit himself stated the reason for his opinions that Plaintiff would miss more than two days of work each month and would be greatly slower than normal in completing job-related tasks: on the same form that those opinions were made, in response to a question posing, "Please state the medical reasons for the above answers," Dr. Benoit stated: "chronic nerve pain from the palmer cutaneous nerve left arm." (AR 388, 391.) The ALJ's decision reveals that he failed to consider Plaintiff's pain, beyond finding that Plaintiff could not use his left arm for pushing, pulling, handling, reaching, fingering, or feeling.[3] But Dr. Benoit's opinion clearly includes limitations other than Plaintiff not being able to use his left arm, which limitations the Doctor opined were attributable to Plaintiff's chronic nerve pain and not due to his inability to use his left arm. The ALJ failed to adequately consider this latter opinion regarding Plaintiff's chronic nerve pain which affected his ability to work in ways other than limiting his ability to use his left arm. If the ALJ was unsure about Dr. Benoit's opinion that Plaintiff's "chronic nerve pain" would cause him to miss more than two days of work each month, would require him to take more rest breaks, and would result in him completing work tasks "[g]reatly slower" than normal (AR 391), the ALJ should have contacted Dr. Benoit for clarification. *See Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from

---

[3] Given that the ALJ's RFC determination (AR 11) and hypothetical to the VE (AR 48-52) included the limitation that Plaintiff refrain from using his left arm/hand, Plaintiff's argument that the ALJ erred in failing to consider the impact that Plaintiff's use of a cast or bone stimulator had on his ability to work (*see* Doc. 16-2 at 9), lacks merit. There is no evidence that wearing either of these devices limited Plaintiff in any way other than impeding his use of his left arm/hand.

13

the treating physician and to develop the administrative record accordingly.") (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996) ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

The Commissioner asserts that the ALJ's rejection of Dr. Benoit's opinions regarding Plaintiff's work absences, pace of completing work-related activities, and rest requirements, is supported by the opinions of agency consultants Drs. Cynthia Short and Leslie Abramson. (*See* AR 218-25, 253, 255.) However, the ALJ does not cite to these opinions anywhere in his decision. More importantly, as pointed out by Plaintiff, these consultants' opinions were based on an incomplete record, given that they reviewed the file before Dr. Benoit made his opinions and before a substantial amount of medical evidence of treatment was added to the record (*see, e.g.,* AR 256-365, 381-91).

Specifically, Dr. Short's opinion was made in August 2008, almost two years before Dr. Benoit offered his April 2010 opinions; and Dr. Abramson's opinion was made in January 2009, over one year before Dr. Benoit offered his opinions. The medical evidence created after Dr. Short and Dr. Abramson gave their respective opinions – which evidence Dr. Benoit had the benefit of considering in his opinions – demonstrates that Plaintiff's condition deteriorated since the agency consultants made their opinions (*see, e.g.,* AR 226-27, 235, 239-41, 266, 290, 292, 294, 296, 298, 300-04, 312, 316, 343, 355, 380-83), significantly diminishing the value of these opinions. *See Tarsia v. Astrue*,

14

418 F. App'x 16, 18 (2d Cir. 2011) (where it is "unclear" whether agency consultant reviewed "all of [plaintiff's] relevant medical information," consultant's opinion is not supported by evidence of record, as required to override the opinion of a treating physician). In fact, as mentioned above, it was not until December 2008, months after Dr. Short made her opinion, that Plaintiff underwent his first surgery on his wrist. (AR 239-41.) And it was not until June 2009 and December 2009, respectively, months after the later of the two agency consultant opinions, that Plaintiff underwent his second and third surgeries (AR 36, 300-04, 312, 343).

## Conclusion

Because the ALJ did not follow the treating physician rule, the matter must be remanded for a reassessment of Plaintiff's RFC and a new decision regarding whether jobs exist in significant numbers in the national economy that Plaintiff can perform. It is clear that the ALJ's error in applying the treating physician rule was not harmless, as the VE testified that, if the ALJ had adopted Dr. Benoit's opinions that Plaintiff would miss more than two days of work each month and would require more than the normal rest breaks, Plaintiff would not be able to perform the jobs listed in step five of the ALJ's decision. (*See* AR 52 (VE testified that, with respect to the jobs the ALJ determined Plaintiff could do, (a) the "acceptable absentee rate" was "one, possibly two[,] days per month"; and (b) "[a]ny rest beyond the normal work breaks would not be tolerated.").)

For these reasons, Plaintiff's Motion (Doc. 16) is GRANTED, and the Commissioner's Motion (Doc. 22) is DENIED. Accordingly, the Court REVERSES the decision of the Commissioner and REMANDS under sentence four of 42 U.S.C. § 405(g) for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 10th day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge